IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN  DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:10cr140-WKW |
| | ) | |
| ANTWOIN HARBISON | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

On August 16, 2011, defendant Antwoin Harbison ("Harbison") filed a motion to suppress all physical evidence seized and all information obtained during the allegedly unconstitutional execution of three search warrants on April 8, 2010, July 9, 2010, and July 29, 2010.  (Doc. # 116).  Harbison asserts that the search warrants were defective in that they did not reasonably identify the residence to be searched, and with respect to the third warrant, the execution of that warrant exceeded the scope of probable cause.  Consequently, Harbison urges the court to suppress all evidence seized and all information gained as the result of the execution of the search warrant as violative of the Fourth Amendment.

Although the court set an evidentiary hearing on the defendant's motion to suppress on November 1, 2011, the parties agreed to proceed on the basis of stipulated facts.  On November 4, 2011, the parties submitted a joint stipulation of facts (doc. # 126).  Upon consideration on the joint stipulation of facts, and argument of the parties, the court concludes that the motion to suppress is due to be denied.

# FACTS[1]

On April 8, 2010, Prattville City Police Investigator Clint Lee presented a search warrant and affidavit to Municipal Judge Colley for the City of Prattville. Officer Lee sought to search a residence at 1563 Hwy 14 West, Prattville, Alabama for "controlled substances, to wit, cocaine and or the elements to make crack cocaine, and other drug related paraphernalia, and other items as set forth in attachment number 1,..."[2]  (Def's Ex. 1).

---

[1]  The facts are compiled from attachments to the defendant's motion to suppress and the joint stipulation of facts.

[2]  The items listed in attachment 1 are as follows:

1.  Books, records, receipts, notes, address and telephone books, ledgers, other papers, computers, hard drives, monitors, keyboards, printers, main frame, external hard drives, CD ROM writers and readers, tape back ups, 5 ¼ and 3 ½ disks and all programs, literature, and books that reference material to said computer equipment and any other electronic equipment used for storing or recording information related to drug trafficking and/or which may identify: drug-related transaction (sic); the names, telephone numbers and customers; travel related to drug trafficking; the accumulation and expenditures of drug proceeds; and locations used to facilitate drug trafficking.

2.  Books, records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier's checks, receipts, passbook's (sic), bank checks and other items evidencing the acquisition, secreting, transfer and/or concealment of asset and acquisition, secreting, transfer, concealment and/or expenditure  of money, safe deposit box records and/or keys.

3.  Telephone digital or voice pagers, including any stored information contained in said pagers; stored information contained on any telephone answering machines and/or tapes; and any incoming calls or information received from the execution of this warrant until the return of this warrant as it relates to said telephone digital or voice pagers, and telephone answering machines.

4.  United States currency, precious metals, jewelry and financial instruments including but not limited to: stocks and bonds and real estate deeds of trust.

5.  Photographs and video tapes of drug related scenes, the suspect, co-conspirators and property and assets purchased with drug proceeds.

6.  Illegally possessed firearms which may be used to protect drugs, drug proceeds and drug trafficking activities, including handguns, rifles, shotguns and automatic weapons.

7.  Any and all Controlled substances to wit: cocaine/crack cocaine

8.  Paraphernalia for packaging, weighing, distributing and using controlled substances,

The affidavit identified the location of the residence as 1563 Hwy 14 West, Prattville, Alabama, 36067, and described the residence as a "light colored mobile home trimmed in red with a wooden front porch. As you turn and go up the driveway it is the third mobile home on the left." (Doc. # 116, Ex. 1; Doc. # 126, ¶ 2.)

Narcotics officers had been investigating criminal activity at the residence after they received information from an informant that Harbison, also known as Gump, was selling crack cocaine out of the residence. (Doc. # 126, ¶ 3). Prior to seeking the search warrant, Prattville City police officers conducted surveillance on the residence to corroborate the information received from the confidential informant. (*Id*. at ¶ 4). Officers conducted surveillance on April 6, 2010 noticing a high volume of vehicles traveling to and from the residence. They observed and videotaped activity they believed was consistent with illegal drug trafficking. (*Id*.) In particular, officers observed Curtis Lamar conduct a "hand-to-hand exchange" of a white substance in return for cash. (*Id*. at ¶ 5).

The officers also observed a known drug user, Tyrone Johnson, enter the residence twice during a one-hour period. After Johnson's second trip into the residence Prattville City police officers conducted a traffic stop, and Johnson admitted he was in possession of crack cocaine purchased from the defendant's residence. (*Id*. at ¶ 6).

---

including, but not limited to; scales, baggies, tin foil and cutting agents.

9.   Indicia of occupancy, residency, and/or ownership of the premises described above, including, but not limited to: utility and telephone bills, mail, checks and keys.

10.  Any and all other evidence of violations of Federal and State drug laws.

When preparing the search warrant, the officers "made their best efforts to determine the address of the trailer." (*Id*. at ¶ 8). The targeted mobile home was one of four mobile homes on a lot that was accessible only by an unpaved and unmarked dirt road. (*Id*.) During their surveillance of the mobile home from a wooded area close to the residence, the officers were unable to see a specific house number on the trailer. (*Id*. at ¶ 9). The officers consulted the Prattville City Map Book attempting to better ascertain the address of the mobile home. (*Id*.) Because the Map Book designated the unpaved road from Highway 14 to the lot upon which the trailer sat as "1563," the officers used '1563' as the street number for the search warrant.[3] While there was another trailer that was light colored with red trim, the officers differentiated the model home to be searched by adding the description of a wooden front porch." (*Id*. at ¶ 11). Harbison's residence was the only mobile home with a wooden front porch. (*Id*.)

The Municipal Court judge issued the warrant based on Lee's affidavit at 10:28 a.m. on April 8, 2010. The search warrant was executed on April 8, 2010. Prior to executing the warrant, Prattville narcotics investigators Mark Harrell and Clint Lee briefed the officers who would be executing the search warrant. (*Id*. at ¶ 12). During the briefing, Officers Harrell and Lee, who had also conducted extensive surveillance on the residence, provided a detailed description of the property including the "most unique feature of the trailer that clearly distinguished it from all other mobile homes on the lot – there was an aggressive pit bull

---

[3] The officers have since learned that the residence number of the mobile home is '1551', not '1563.' (Doc. # 126 at ¶ 10).

chained to the wooden porch." (*Id*. at ¶ 13). As the agents approached the third trailer on the left which was also light colored with red trim, the agents shot and killed a white pit bull on the wooden porch. (*Id*. at ¶ 14-15). The agents seized crack cocaine and other evidence at the residence. (*Id*. at ¶ 15, 17). Defendants Antwoin Harbison and Curtis Lamar Powell and another individual, Jamie Lucas, were arrested when the search warrant was executed. (*Id*. at ¶16).

On July 9, 2010, Investigator Lee obtained a second search warrant based on a controlled buy of crack cocaine through a confidential informant. (*Id*. at ¶ 18). The confidential informant purchased crack cocaine from an individual named Rushon Peagler. (*Id*. at ¶ 19). Peagler drove the confidential informant to a trailer located at 1563 Highway 14 West to obtain crack cocaine. (*Id*.) After the purchase, the confidential informant advised Lee that Peagler produced crack cocaine after entering a trailer she described as light colored with red trim with a wooden porch. (*Id*. at ¶ 20). Relying on the information provided by the confidential informant, Lee obtained a search warrant for the residence. (*Id*. at ¶ 21). Lee utilized the same address and description in the second warrant as he used in the first warrant. (*Id*.) A small amount of crack cocaine was seized during the execution of the search warrant. (*Id*.)

On July 29, 2010, Investigator Mark Harrell went to the residence with felony arrest warrants looking for Harbison. (*Id*. at ¶ 22). Harrell went to the same mobile home at 1563 Highway 14 West that was searched on April 8 and July 9. (*Id*. at ¶ 23) When he entered

the residence, he observed what appeared to be crack cocaine in plain view on a coffee table. (*Id.*)  Harrell then secured the residence and obtained a search warrant based upon his observation of drugs in the home.   Utilizing the same address and description in the third warrant as was used in the first and second warrants, Harrell obtained a third search warrant for the residence.  (*Id.* at ¶ 24).  When the third search warrant was executed, a small amount cocaine was seized.  (*Id.*).

Harbison was indicted on August 17, 2010, and charged with knowingly and intentionally conspiring to manufacture, distribute use and possessing with intent to distribute cocaine and crack cocaine in violation of 21 U.S.C. § 846.  He was also charged with aiding and abetting others with possession with the intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1).  (Doc. # 1).

## DISCUSSION

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. AMEND. IV.[4]  "The Amendment protects persons against unreasonable searches of "their persons [and] houses."  *Minnesota v. Carter*, 525 U.S. 83, 88 (1998).  The Fourth Amendment further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and

---

[4]  Specifically, the Fourth Amendment provides that "[]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

the persons or things to be seized."  Probable cause to support a search warrant exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States  v. Brundidge*,  170 F.3d 1350, 1352 (11th Cir. 1999).  Evidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution.  *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002).

Harbison contends that the evidence taken from his residence during the searches conducted on April 8, July 9 and July 29, 2010, should be suppressed because the search warrants "did not reasonably identify the place to be searched."  (Doc. # 116, Mot. to Suppress, at 4, ¶ 16).

> A warrant's description of the place to be searched is not required to meet technical requirements or have the specificity sought by conveyancers.  The warrant need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority.  An erroneous description of the premises to be searched does not necessarily render a warrant invalid.

*United States v. Burke*, 781 F.2d 1090, 1092 (11th Cir. 1986).  *See also United States v. Schwinn*, 376 Fed. Appx. 974, 980 (11th Cir. 2010).

Investigators Lee and Harrell began investigating illegal drug trafficking at the residence afer receiving information that the defendant was selling crack cocaine from the mobile home.  The affidavit named the location of the residence as 1563 Hwy 14 West, Prattville, Alabama, 36067, and described the residence as a "light colored mobile home

trimmed in red with a wooden front porch.  As you turn and go up the driveway it is the third mobile home on the left." (Doc. # 116, Ex. 1; Doc. # 126, ¶ 2.)  The officers conducted extensive surveillance on the residence observing a high volume of vehicles traveling to and from the residence, and witnessed at least one "hand-to-hand exchange" of a white substance in return for cash.  The officers watched a known drug user enter the residence twice in an hour.  After the drug user left the residence, the officers conducted a traffic stop and found crack cocaine.  The drug user admitted to getting the drugs in the residence.  The officers utilized the Prattville City Map Book to better ascertain the address of the mobile home. They differentiated the mobile home to be searched from another trailer by adding the description of a wooden front porch." (*Id*. at ¶ 11).  Harbison's residence was the only mobile home with a wooden front porch.  (*Id*.)

Prior to executing the warrant, Harrell and Lee, who had conducted surveillance and participated in the investigation of Harbison, briefed the officers who would be executing the search warrant.  During the briefing, Harrell and Lee described in detail the property to be searched.  The officers specifically described an aggressive pit bull that was chained to the wooden porch of the residence to be searched.  The agents approached the third trailer on the left which was light colored with red trim, and had a white pit bull chained on the wooden porch.  Crack cocaine was seized during the first search.

When the second search warrant was sought on July 9, 2010, Investigator Lee relied on his involvement in the investigation and subsequent execution of the first search warrant,

as well as information provided by a confidential informant who was involved in a controlled buy at the residence.  The confidential informant described the mobile home as light colored with red trim with a wooden porch.  (*Id*. at ¶ 20).

Finally, Harrell obtained the third warrant only after observing crack cocaine in plain view.  Moreover, Harrell was also involved in the investigation and execution of the prior warrants.

The court may consider "the knowledge of the officer executing the warrant, even where such knowledge was not reflected in the warrant or in the affidavit supporting the warrant." *Burke*, 781 F.2d at 1093.  Based on the officers' knowledge and prior experience at the residence, the search warrants described the residence to be search with sufficient particularity to ensure that the correct residence was searched.  "The Fourth Amendment requires only that the search warrant describe the premises in such a way that the searching officer may "'with reasonable effort ascertain and identify the place intended.'" *Id.*, at 1092 (internal citations omitted).

To the extent that Harbison suggests that the officers did not have probable cause to search his entire residence after they saw cocaine in plain view on the table, he is entitled to no relief.  (Doc. # 116 at 3-4, ¶¶ 12-13).  It is undisputed that the officers had valid felony arrest warrants for the defendant when they entered the residence.  The officers knew the residence was Harbison's.  Consequently, the officers could enter the residence to  execute the warrants. *See Payton v. New York*, 445 U.S. 573, 603, (1980) ("for Fourth Amendment

9

purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."). *See also United States v. Bervaldi*, 226 F.3d 1256, 1262-63 (11th Cir. 2000).

> It is true that an arrest warrant requirement may afford less protection than a search warrant requirement, but it will suffice to interpose the magistrate's determination of probable cause between the zealous officer and the citizen. If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which a suspect lives when there is reason to believe the suspect is within.

445 U.S. at 603.

The defendant ignores the undisputed fact that the officers had a valid arrest warrant for him and reason to believe he was present in the residence. Once the officers entered the residence, any evidence they saw in plain view, coupled with their prior knowledge of Harbison and his activities at the residence, was sufficient to secure a search warrant for the entire residence.

In his motion to suppress, Harbison argues that "[t]here was no probable cause for an extensive search of the entire residence, only for a search of the immediate area around the coffee table where the suspected cocaine was observed by the officers." (Doc. # 116 at 4, ¶ 13). Harbison appears to argue that there was not sufficient probable cause to support a search warrant that authorized a search of the entire residence. Harbison is simply wrong.

After observing what they believed to be cocaine, the officers secured the residence and obtained a search warrant.   That observation, coupled with the officers' previous investigations and the execution of two prior search warrants that discovered cocaine in the residence, there was "a fair probability that contraband or evidence of a crime will be found in a particular place."  *Gates*, 462 U.S. at 238; *Brundidge*, 170 F.3d at 1352.  Thus, probable cause existed to support the search warrant.  Once the officers had a valid search warrant to search the residence, they were not limited to searching only the area around which they had seen cocaine.  While the scope of the search is constrained by reasonableness, it was reasonable to believe that illegal substances would be found in other areas in the residence. "Where a warrant has been issued, 'a lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Martinez*, 949 F.2d 1117, 1120 (11th Cir. 1992).  Consequently, the search did not exceed the scope of the warrant, nor did it violate the Fourth Amendment's prohibition on unreasonable searches.

Based on the facts of this case, the court concludes that Harbison's motion to suppress is due to denied.

## CONCLUSION

For the reasons stated, the court finds that the defendant's rights secured by the Fourth Amendment were not violated.  Accordingly, it is the RECOMMENDATION of the

11

Magistrate Judge that the defendant's motion to suppress (doc. # 116) be denied.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **December 2, 2011.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th  Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 18th day of November 2011.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

12